Todd Blanche
Acting Attorney General of the United States
Courtney R. Pratten
Jeremy J. Kelley
Tyler H.L. Tornabene
Assistant United States Attorneys
Eastern District of Washington
402 E. Yakima Avenue, Suite 210
Yakima, WA 98901
Telephone: (509) 454-4425

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

APR 20 2026

SEAN F. McAVOY, CLERK
RICHLAND, WASHINGTON

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 4:25-CR-06033-MKD-2 |
| Plaintiff, | Plea Agreement |
| v. | |
| GIOVANNA SIERRA CARRILLO, | |
| Defendant. | |

Plaintiff United States of America, by and through Courtney R. Pratten, Jeremy J. Kelley, and Tyler H.L. Tornabene, Assistant United States Attorneys for the Eastern District of Washington, and Defendant Giovanna Sierra Carrillo ("Defendant"), both individually and by and through Defendant's counsel, Mitchell K. Crook, agree to the following Plea Agreement.

1.    Guilty Plea and Maximum Statutory Penalties

Defendant agrees to enter a plea of guilty to Count 37 and Count 38 of the Superseding Indictment filed on February 11, 2026, which charges Defendant with Fraud in Foreign Labor Contracting, in violation of 18 U.S.C. § 1351(a), 2, a Class D felony.

Defendant understands that the following potential penalties apply:

PLEA AGREEMENT - 1

    a.    a term of imprisonment of not more than 5 years;

    b.    a term of supervised release of not more than 3 years;

    c.    a fine of up to $250,000;

    d.    restitution; and

    e.    a $100 special penalty assessment per felony conviction.

Defendant agrees to enter a plea of guilty to Count 40 of the Superseding Indictment filed on February 11, 2026, which charges Defendant with Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A, which has a mandatory minimum term of imprisonment of two years to run consecutive to any other sentence imposed.

Defendant understands that the following potential penalties apply:

    a.    a term of imprisonment of 2 years consecutive to any other term of imprisonment;

    b.    a term of supervised release of not more than 1 year;

    c.    a fine of up to $250,000;

    d.    restitution; and a $100 special penalty assessment per felony conviction

2.    <u>Supervised Release</u>

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, up to the following terms:

    a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony,

PLEA AGREEMENT - 2

c.      2 years in prison if the offense that resulted in the term of Supervised Release is a class C or D felony, and/or

d.      1 year in prison if the offense that resulted in the term of Supervised Release is any other offense.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3.      The Court is Not a Party to this Plea Agreement

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

a.      sentencing is a matter solely within the discretion of the Court;

b.      the Court is under no obligation to accept any recommendations made by the United States or Defendant;

c.      the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

d.      the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

e.      the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

f.      the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

PLEA AGREEMENT - 3

4.    <u>Potential Immigration Consequences of Guilty Plea</u>

If Defendant is not a citizen of the United States, Defendant understands the following:

    a.    pleading guilty in this case may have immigration consequences;

    b.    a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

    c.    removal from the United States and other immigration consequences are the subject of separate proceedings; and

    d.    no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

5.    <u>Waiver of Constitutional Rights</u>

Defendant understands that by entering this guilty plea, Defendant is knowingly and voluntarily waiving certain constitutional rights, including the following:

    a.    the right to a jury trial;

    b.    the right to see, hear and question the witnesses;

    c.    the right to remain silent at trial;

    d.    the right to testify at trial; and

    e.    the right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands that Defendant retains the right to be assisted by an attorney through the sentencing proceedings in this case and any direct appeal of Defendant's

PLEA AGREEMENT - 4

conviction and sentence, and that an attorney will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

6.     <u>Admissibility of Facts and Prior Statements</u>

By signing this Plea Agreement, Defendant admits the truth of the facts set forth in the Factual Basis section of this Plea Agreement and agrees that these facts, along with any written or oral statements Defendant makes in court, shall be deemed usable and admissible against Defendant in any subsequent legal proceeding, including criminal trials and/or sentencing hearings, under Federal Rule of Evidence 801(d)(2)(A).

Defendant acknowledges, admits, and agrees that by signing this Plea Agreement, Defendant is expressly modifying and waiving Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to any facts Defendant admits and/or any statements Defendant makes in court.

7.     <u>Elements of the Offense</u>

The United States and Defendant agree that in order to convict Defendant of Fraud in Foreign Labor Contracting, in violation of 18 U.S.C. § 1351(a), the United States would have to prove the following beyond a reasonable doubt.

         a.     *First*, between on or about the charged timeframe, the defendant recruited, solicited, or hired a person outside the United States, or caused another person to do so, or attempted to do so;

         b.     *Second*, the defendant did so by means of materially false or fraudulent pretenses, representations, or promises regarding that employment; and,

PLEA AGREEMENT - 5

     c.    *Third*, the defendant acted knowingly and with intent to defraud.

The United States and Defendant agree that in order to convict Defendant of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1), the United States would have to prove the following beyond a reasonable doubt.

     a.    *First*, on or about June 2, 2022, the defendant knowingly used without legal authority a means of identification of another person;

     b.    *Second*, the defendant knew that the means of identification belonged to a real person; and,

     c.    *Third*, the defendant did so during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), to wit, Fraud in Foreign Labor Contracting, in violation of 18 U.S.C. § 1351(a).

8.    Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing.

From 2022 through 2023, in the Eastern District of Washington, Defendant worked for Defendant FRANCISCO RODRIGUEZ MARTEL, the owner and operator of a business called Harvest Plus. Harvest Plus was a foreign labor contacting business based out of Kennewick, Washington that recruited, solicited, and hired foreign agricultural workers to farms in the Eastern District of Washington and Oregon. Harvest Plus did so by participation in the H-2A visa

PLEA AGREEMENT - 6

program. This program is the mechanism by which foreign laborers can temporarily work in the United States in the agricultural sector when there is an absence of domestic workers. The workers Harvest Plus recruited, solicited, or hired outside the United States tended to work in the apple, cherry, and blueberry fields, as well as in vineyards.

In growing years 2022 and 2023, Defendant was the business agent, account manager, and the H-2A Program Manager for Harvest Plus. In those roles, Defendant was responsible for communicating with prospective agricultural customers, H-2A workers, and federal and state regulatory personnel who were responsible for the administration and regulation of the H-2A programs. The two federal agencies primarily involved in processing the H-2A petitions and visas are the Department of Labor (DOL) and the United States Citizenship and Immigration Services (USCIS).

As part of her official duties and responsibilities, Defendant prepared the H-2A petitions sent to DOL and USCIS. Given that, Defendant was directly involved in completing and submitting the following relevant documentation to those agencies: (1) DOL's ETA 9142A (Application for Temporary Employment Certification Form); (2) DOL's ETA 790A (Agricultural Clearance Order Form); and (3) USCIS's Form I-129 (Petition for Non-Immigrant Worker for H-2A visas).

When she prepared ETA 9142As to send to DOL, Defendant understood the following. First, this form was submitted to DOL, one of the federal agencies overseeing the H-2A program. Second, the ETA 9142A was accompanied by a second form, the ETA 790. Third, the following material information needed to be included on or sent with the requisite forms: (1) the specified time H-2A labor was needed, as well as the type of work required and the location at which it would be completed; (2) a copy of each work contract agreement between Harvest Plus and the farmer; (3) an original surety bond. As Harvest Plus's H-2A Program Manager, Defendant understood Harvest Plus was prohibited from receiving payment of any

PLEA AGREEMENT - 7

kind from the recruited H-2A workers; Harvest Plus needed to comply with all Federal, state, and local employment laws; Harvest Plus was required to pay a certain wage to all workers; and, Harvest Plus was required to probe the local market for domestic workers prior to applying to bring H-2A workers into the country. Furthermore, Defendant knew the entire H-2A petition was signed under penalty of perjury.

When Defendant prepared the Form I-129s, Defendant understood this form was submitted to USCIS, the second federal agency primarily responsible for oversight and administration of the H-2A program. Defendant understood that completing the form was done under penalty of perjury, and that accurate information regarding the work to be performed by H-2A workers, relevant job titles and descriptions, dates of the work contract, the physical location of the work site, and wages and pay information was a material requirement of the I-129. Defendant also understood that a supplemental form to the I-129 required attestation of the following: none of the H-2A workers paid any compensation as a condition of employment to Harvest Plus and Harvest Plus agreed to abide by the rule and regulations of the H-2A program.

Finally, as the Program Manager of the Harvest Plus H-2A program, Defendant knew and understood the following material conditions of the H-2A program. Harvest Plus was strictly prohibited from collecting or receiving money from a worker for any fees or expenses incurred during the visa petition process. Harvest Plus was prohibited from charging workers for tools, supplies, or any other equipment required for the job, any transportation, and for housing. Harvest Plus was required to provide safe and clean drinking water for the workers, access to healthcare, sick leave, and overtime. Defendant also knew and understood that Harvest Plus and its agents could not lie to the workers about the terms of their contract, working conditions, benefits, and wages related to their employment.

PLEA AGREEMENT - 8

During Defendant's time as the Program Manager for Harvest Plus's H-2A program, she knowingly and intentionally worked with other management members of Harvest Plus, Defendants FRANCISCO RODRIGUEZ MARTEL and ERICA CISNEROS, to submit fraudulent petitions to bring a total of 432 H-2A workers from Mexico to the Eastern District of Washington. The petitions were fraudulent in that they contained false material statements on the various forms submitted to the DOL and USCIS that enabled Defendant and Harvest Plus to illegally personally profit and benefit from the program.

When Defendant completed ETA 9142A, Defendant falsely and fraudulently represented and promised that Harvest Plus would provide transportation and housing at no cost to the workers, when in reality, workers were forced to pay their own transportation to the United States as well as illegal weekly housing fees. Defendant falsely and fraudulently represented and promised that Harvest Plus would provide specific farms a certain number of workers for designated worksites on designated dates, when in reality, Defendant knew workers would be placed at other locations and that she and her co-conspirators, Defendants FRANCISCO RODRIGUEZ MARTEL and ERICA CISNEROS, were inflating the number of workers farmers requested so Defendant and Defendants FRANCISCO RODRIGUEZ MARTEL and ERICA CISNEROS could benefit from having extra workers to place as they wished. Defendant falsely and fraudulently represented and promised that Harvest Plus would pay H-2A workers the prevailing wage, when in reality, Defendant, and Defendants FRANCISCO RODRIGUEZ MARTEL and ERICA CISNEROS did not pay the correct rate or did not pay for overtime. On more than one occasion, Defendant completed and filed H-2A petitions knowing full well that the information she supplied on the paperwork was false, and that the material conditions she was agreeing to as an agent of Harvest Plus would not be adhered to.

PLEA AGREEMENT - 9

Similarly, when Defendant completed multiple Form I-129s, she falsely represented prospective H-2A workers would be working at a specific location for a specific time, doing a specific job, and she indicated both that Harvest Plus would not accept payment from workers, and all travel would be paid by Harvest Plus. However, while making these representations to both the federal government and to the workers themselves, Defendant knew travel would be paid by the workers without reimbursement. She also knew she was inflating the number of workers needed in various locations in the Eastern District of Washington, and she misrepresented where they would be working.

Defendant was specifically involved with Defendants FRANCISCO RODRIGUEZ MARTEL and ERICA CISNEROS in forging the name of A.J.D.H., a real person and the owner and operator of a vineyard in the Eastern District of Washington, on a work order on or about June 2, 2022, after meeting with A.J.D.H. The meeting concerned the possibility of A.J.D.H. getting H-2A workers from Harvest Plus. However, not having reached a deal, Defendant with Defendants FRANCISCO RODRIGUEZ MARTEL and ERICA CISNEROS then, without A.J.D.H.'s consent or knowledge, and knowing A.J.D.H. was a real person, forged his name on a work order indicating H-2A workers were needed at the A.J.D.H. farm in Grandview, Washington, from July 5, 2022, through August 15, 2022, for the cherry harvest and apple thinning at worksites in Sunnyside and Prosser, Washington. Defendant then sent the work order to the DOL as part of a fraudulent H-2A petition for A.J.D.H., and the information was included in the I-129 that was later sent to the USCIS. A.J.D.H.'s signature is a means of identification belonging to A.J.D.H. The forged document was material and necessary to Harvest Plus receiving the appropriate approvals and legally obtaining visas necessary to bring over H-2A workers under the fraudulent work order bearing the forged signature of A.J.D.H.

PLEA AGREEMENT - 10

Not only did Defendant make false and fraudulent pretenses, representations, or promises in the forms she submitted to DOL and USCIS, she also lied to the H-2A workers she helped recruit – both directly and by omission. Defendant knew H-2A workers were not supposed to pay for their own transportation and she knew the workers were told this during the recruitment period. However, she also knew they did pay for their travel, and she knew they were not reimbursed. Defendant knew the workers were paying illegal housing fees – though she was one of the ones who told workers and DOL that they would not be charged for housing. Defendant also knew if she did not indicate to DOL that these two rules were followed, H-2A petitions would not be approved. Defendant and Defendants FRANCISCO RODRIGUEZ MARTEL and ERICA CISNEROS told workers they would be working at certain farms and for certain wages during defined times. However, as Defendant knew, some of the workers were sent to unapproved work locations, and some were even sent to non-agricultural sectors.

During the 2022 and 2023 recruiting efforts Defendant personally participated in the recruitment of workers by telling them they would get paid for a certain job in a certain place and for a certain time. She also told them they would get housing and travel paid. Defendant knew while she was recruiting these H-2A workers that these statements were not true, but she made them with the express goal of luring the workers into the country for her own personal gain, and for the gain of Harvest Plus and Defendants FRANCISCO RODRIGUEZ MARTEL and ERICA CISNEROS.

The false and fraudulent material pretenses, representations, and promises made by Defendant and Defendants FRANCISCO RODRIGUEZ MARTEL and ERICA CISNEROS also resulted in a financial harm to the workers. Each worker went unreimbursed for transportation to the United States and visa costs. Each worker was charged unlawful housing fees. Defendant agrees and stipulates that

PLEA AGREEMENT - 11

the loss caused to 518 H-2A workers identified in this matter was more than $550,000, but less than $1,500,000.

9.    The United States' Agreements

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss the remaining charges as to Defendant.

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

10.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

As to Count 40, Aggravated Identity Theft, in violation of 18 U.S.C. 1028A, the United States and Defendant agree that the Guidelines range is term of imprisonment required by statute, that is twenty-four months consecutive to any other term of imprisonment. U.S.S.G. §2B1.6(a); 18 U.S.C. § 1028A.

As to Counts 37 and 38, Fraud in Foreign Labor Contracting, in violation of 18 U.S.C. § 1351(a), the United States and Defendant agree:

a.    Base Offense Level

The United States and the Defendant agree that the base offense level for Fraud in Foreign Labor Contracting is 6. U.S.S.G. §2B1.1(a)(2).

PLEA AGREEMENT - 12

b.    Special Offense Characteristics

The United States and the Defendant both agree that Defendant's base offense level is increased by 14 levels because Defendant's conduct caused a loss amount of more than $550,000 and less than $1,500,000. U.S.S.G. §2B1.1(b)(1)(H).

The United States believes Defendant's base offense level is increased by 6 levels because the offense resulted in substantial financial hardship to 25 or more victims. U.S.S.G. §2B1.1(b)(2)(C).

The United States believes Defendant's base offense level is increased by 2 levels because the offense involved theft from the person of another. U.S.S.G. §2B1.1(b)(3).

The United States believes Defendant's base offense level is increased by 2 levels because a substantial part of the fraudulent scheme was committed from outside the United States. §2B1.1(b)(10).

The United States believes Defendant's base offense level is increased by 2 levels because the Defendant knew or should have known that a victim of the offense was a vulnerable victim. §3A1.1(b)(1).

The United States believes Defendant's base offense level is increased by 2 levels because Defendant abused a position of trust in committing the offense. §3B1.3.

The Defendant reserves the right to argue against any and all of the above-referenced enhancements that the United States and Defendant have not both agreed apply to the facts of this case. The United States and Defendant may argue in favor of or against any other specific offense characteristics or adjustments identified in the Pre-Sentence Investigation Report.

c.    Acceptance of Responsibility

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if

PLEA AGREEMENT - 13

Defendant does the following:

      i.     accepts this Plea Agreement;

      ii.    enters a guilty plea by April 20, 2026;

      iii.   demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

      iv.   provides complete and accurate information during the sentencing process; and

      v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

      d.    Agreements Regarding Representations to the Court

The United States has a duty of candor to the tribunal. If the United States and Defendant do not agree on the appropriate length of incarceration, the appropriate length or applicable terms of supervised release, and/or the correct guidelines calculations, variances, departures, and/or enhancements, the United States reserves the right to respond to any and all arguments made by Defendant, on any bases the United States deems appropriate, at all stages of this criminal case.

Defendant may make any arguments it deems appropriate, at all stages of this criminal case.

With regard to all briefing, submissions, and hearings in this criminal case, the United States and Defendant agree to the following provisions:

PLEA AGREEMENT - 14

i.    The United States and Defendant may each respond to any questions from the Court or United States Probation Office;

ii.    The United States and Defendant may each supplement the facts under consideration by the Court by providing information the United States or Defendant deems relevant;

iii.    The United States and Defendant may each present and argue any additional facts that the United States or Defendant believe are relevant to the Sentencing Guidelines computation or sentencing;

iv.    The United States and Defendant may each present and argue information that may already be known to the Court, including information contained in the Presentence Investigation Report;

v.    The United States and Defendant may each respond to any arguments presented by the other;

vi.    In order to support the United States' sentencing recommendation as set forth herein, the United States may oppose and argue against any defense argument or any recommendation for any sentence lower than the sentence recommended by the United States on any basis, including arguments for a lower offense level, a lower criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;

PLEA AGREEMENT - 15

> vii.    In order to support the defense sentencing recommendation as set forth herein, Defendant may oppose and argue against any argument by the United States, or any recommendation for any sentence higher than the sentence recommended by the defense on any basis, including arguments for a higher offense level, a higher criminal history calculation, the application or non-application of any sentencing enhancement or departure, and/or any variance from the Guidelines range as calculated by the Court;
>
> viii.    The United States may make any sentencing arguments the United States deems appropriate so long as they are consistent with this Plea Agreement, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Plea Agreement, and Defendant's relevant conduct; and
>
> ix.    Defendant may make any sentencing arguments consistent with this Plea Agreement Defendant deems appropriate.

e.    No Other Agreements

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances.

f.    Criminal History

The United States and Defendant have no agreement and make no representations about Defendant's criminal history category, which will be determined by the Court after the United States Probation Office prepares and discloses a Presentence Investigative Report.

PLEA AGREEMENT - 16

11.  Incarceration

At the time of Defendant's original sentencing in the District Court, the United States agrees to make a sentencing recommendation to the Court that is consistent with this Plea Agreement.  The United States' agreement to make such a recommendation is limited exclusively to the time of Defendant's original sentencing in the District Court.  The United States' agreement to make such a recommendation does not prohibit or limit in any way the United States' ability to argue for or against any future sentencing modification that takes place after Defendant's original sentencing in the District Court, whether that modification consists of an amendment to the Guidelines, a change to a statutory minimum or maximum sentence, any form of compassionate release, any violation of Supervised Release, or any other modification that is known or unknown to the parties at the time of Defendant's original criminal sentencing.  In this Plea Agreement, the United States makes no promises or representations about what positions the United States will take or recommendations the United States will make in any proceeding that occurs after Defendant's original sentencing in the District Court.

The United States agrees to recommend a sentence of no more than the low end of the Guidelines, as calculated by the United States.

Defendant may recommend any legal sentence.

12.  Supervised Release

The United States and Defendant each agree to recommend 1 year of supervised release on Count 40 and 3 years of supervised release on each of Counts 37 and 38, all to run concurrently.  Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to

PLEA AGREEMENT - 17

withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

a. The United States Probation Officer may conduct, upon reasonable suspicion, and with or without notice, a search of Defendant's person, residences, offices, vehicles, belongings, and areas under Defendant's exclusive or joint control.

b. Defendant shall not participate in preparing or submitting H-2A visa applications.

c. Defendant shall not work in any capacity involving H-2A or foreign agricultural laborers.

13. Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. Mandatory Special Penalty Assessment

Defendant agrees to pay the $300 mandatory special penalty assessment, $100 for each count of conviction, to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

15. Restitution

The United States and Defendant agree that restitution is appropriate and mandatory, without regard to Defendant's economic situation, to identifiable

PLEA AGREEMENT - 18

victims who have suffered physical injury or pecuniary loss, pursuant to 18 U.S.C. §§ 3663, 3663A, 3664.

Pursuant to 18 U.S.C. § 3663(a)(3), Defendant voluntarily agrees to pay restitution for all losses caused by Defendant's individual conduct, in exchange for the United States not bringing additional potential charges, regardless of whether counts associated with such losses will be dismissed as part of this Plea Agreement. With respect to restitution, the United States and Defendant agree to the following:

a.    Restitution Amount and Interest

The United States and Defendant stipulate and agree that the Court should order restitution to workers brought into the United States in an amount to be determined at sentencing and that interest on this restitution amount, if any, should be waived. The United States and Defendant may make any argument to the Court as to the proper amount of restitution to be ordered at sentencing.

b.    Payments

To the extent restitution is ordered, the United States and Defendant agree that the Court will set a restitution payment schedule based on Defendant's financial circumstances. 18 U.S.C. § 3664(f)(2), (3)(A). Regardless, Defendant agrees to pay not less than 10% of Defendant's net monthly income towards restitution.

c.    Treasury Offset Program and Collection

Defendant understands the Treasury Offset Program ("TOP") collects delinquent debts owed to federal agencies.

If applicable, the TOP may take part or all of Defendant's federal tax refund, federal retirement benefits, or other federal benefits and apply these monies to Defendant's restitution obligations. 26 U.S.C. § 6402(d); 31 U.S.C. § 3720A; 31 U.S.C. § 3716.

Defendant understands that the United States may, notwithstanding the

PLEA AGREEMENT - 19

Court-imposed payment schedule, pursue other avenues to ensure the restitution obligation is satisfied, including, but not limited to, garnishment of available funds, wages, or assets.  18 U.S.C. §§ 3572, 3613, and 3664(m).

Nothing in this acknowledgment shall be construed to limit Defendant's ability to assert any specifically identified exemptions as provided by law, except as set forth in this Plea Agreement.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees fully to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Until Defendant's fine and restitution obligations are paid in full, Defendant agrees to provide waivers, consents, or releases requested by the U.S. Attorney's Office to access records to verify the financial information.

### d.    Obligations, Authorizations, and Notifications

Defendant agrees to truthfully complete the Financial Disclosure Statement that will be provided by the earlier of 30 days from Defendant's signature on this plea agreement or the date of Defendant's entry of a guilty plea, sign it under penalty of perjury, and provide it to both the United States Attorney's Office and the United States Probation Office.  Defendant acknowledges and understands that Defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute Defendant's failure to accept responsibility under U.S.S.G §3E1.1.

Defendant expressly authorizes the United States Attorney's Office to obtain a credit report on Defendant upon the signing of this Plea Agreement.  Until Defendant's fine and restitution orders are paid in full, Defendant agrees to provide waivers, consents or releases requested by the United States Attorney's Office to access records to verify the financial information.

PLEA AGREEMENT - 20

Defendant agrees to notify the Financial Litigation Unit of the United States Attorney's Office before Defendant transfers any interest in property with a value exceeding $1,000 owned directly or indirectly, individually or jointly, by Defendant, including any interest held or owned under any name, including trusts, partnerships and corporations. Further, pursuant to 18 U.S.C. § 3664(k), Defendant shall notify the court and the United States Attorney's Office within a reasonable period of time, but no later than within 10 days, of any material change in Defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

Until Defendant's fine and restitution orders are paid in full, Defendant agrees to disclose all assets in which Defendant has any interest or over which Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party.

Pursuant to 18 U.S.C. § 3612(b)(F), Defendant understands and agrees that until Defendant's fine and restitution orders are paid in full, Defendant must notify the United States Attorney's Office of any change in the mailing address or residence address within 30 days of the change.

16.    Payments While Incarcerated

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17.    Judicial Forfeiture

The parties agree forfeiture applies. *See* 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c). With respect to forfeiture, the parties agree to the following:

(a)    Forfeitable Property

The United States shall seek a forfeiture money judgment in this matter and will not seek to forfeit specific property, except as set forth in this Plea Agreement

PLEA AGREEMENT - 21

or authorized by law. The United States will not seek to forfeit proceeds in an amount exceeding what Defendant actually obtained as a result of the crime. *See Honeycutt v. U.S.*, 137 S. Ct. 1626 (2017).

(b)    Money Judgment

Defendant agrees to forfeit to the United States all right, title, and interest in a money judgment, the amount of which is to be determined at sentencing, which represents the amount of proceeds Defendant obtained as a result of her illegal conduct. The United States and Defendant may to take any position as to the proper amount of a money judgement at sentencing.

(c)    Substitute Property

Defendant understands the United States may seek for Defendant to forfeit substitute property in satisfaction of the money judgment if the United States can establish the following regarding the above-described property (*i.e.*, the money judgment): a) it cannot be located upon the exercise of due diligence; b) it has been transferred or sold to, or deposited with, a third party; c) it has been placed beyond the Court's jurisdiction; d) it has substantially diminished in value; e) it has been commingled with other property and cannot be divided without difficulty. *See* 18 U.S.C. § 981(a)(1)(C); 21 U.S.C. § 853(p). The United States will not seek to forfeit substitute property from other defendants or co-conspirators; it may only forfeit substitute property from Defendant. *See* 21 U.S.C. § 853(p).

(d)    Application of Forfeited Property to Restitution

Defendant understands the United States will seek restitution for the victim(s) in this case independent of this money judgment. It is the parties' mutual understanding that the United States Attorney's Office will seek approval to apply the proceeds of any forfeited assets to Defendant's restitution obligations. Defendant recognizes the final decision to approve this application rests with the Attorney General. *See* 18 U.S.C. § 981(d), (e); *see also* 28 C.F.R. 9 *et. seq.*

(e)    Cooperation on Forfeited Assets

PLEA AGREEMENT - 22

Defendant agrees to cooperate with the United States in passing clear title on all forfeited assets. Defendant also agrees to assist the United States in locating any assets that 1) are the proceeds of illegal conduct (as outlined in this Plea Agreement) and 2) have not been dissipated. If such assets are located, then Defendant will stipulate to their forfeiture.

(f)    Waivers

Defendant agrees to waive oral pronouncement of forfeiture at the time of sentencing. *See* Fed. R. Crim. P. 32.2(b)(4)(B). Defendant stipulates and agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with the Plea Agreement on any grounds, including a claim that forfeiture in this case constitutes an excessive fine or punishment.

Defendant stipulates and agrees to hold the United States, and its agents and employees, harmless from any and all claims whatsoever in connection with the investigation, the prosecution of charges, and the seizure and forfeiture of property covered by this Plea Agreement.

18.    Additional Violations of Law Can Void Plea Agreement

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

19.    Waiver of Appeal Rights

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court.

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives any and all of Defendant's rights to

PLEA AGREEMENT - 23

appeal any and all aspects of Defendant's conviction and any and all aspects of the sentence the Court imposes, on any and all grounds.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Defendant expressly waives Defendant's right, even if otherwise authorized by the United States Constitution or federal law, to challenge in the district court, to move to withdraw Defendant's plea based on, or to appeal the validity and/or entry of, any and all charging instruments, any and all plea agreements, any and all pleadings, any and all communications between any and all defense counsel and any and all Assistant United States Attorneys, and/or any and all guilty pleas in the above-captioned matter based on any and all arguments that the United States, the United States Attorney's Office for the Eastern District of Washington, the Deputy Attorney General, any and all First Assistant United States Attorneys for the Eastern District of Washington, any and all Criminal Chiefs for the United States Attorney's Office for the Eastern District of Washington, any and all Assistant United States Attorneys for the Eastern District of Washington, and/or any and all attorneys for the government, are in any way unauthorized to bring, seek, file, and/or resolve any and all aspects of the above-captioned matter, case, and/or charges

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

PLEA AGREEMENT - 24

20.    Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

      a.    Any obligations, commitments, or representations made by the United States in this Plea Agreement shall become null and void;

      b.    The United States may prosecute Defendant on all available charges;

      c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

      d.    The United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim alleging a violation of Double Jeopardy. Defendant agrees not to raise any objections based on the passage of time, including but not limited to alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

21.    Integration Clause

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant,

PLEA AGREEMENT - 25

and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Todd Blanche
Acting Attorney General

/s/ Courtney R. Pratten                4/20/2026
Courtney R. Pratten                      Date
Assistant United States Attorney

/s/ Jeremy J. Kelley                    4/20/2026
Jeremy J. Kelley                          Date
Assistant United States Attorney

/s/ Tyler H.L. Tornabene               4/20/2026
Tyler H.L. Tornabene                     Date
Assistant United States Attorney

//

//

//

PLEA AGREEMENT - 26

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____     4/20/2026
Giovanna Sierra Carrillo                Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____     4/20/2026
Mitchell K. Crook                       Date
Defendant

PLEA AGREEMENT - 27